**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leeandra D. Corless,<br><br>                Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                Defendant. | No. CV-16-00426-PHX-DLR<br><br>**ORDER** |

        Plaintiff applied for social security benefits in October 2012, claiming disability since September 16, 2010. After state agency denials, Plaintiff and a vocational expert testified at a hearing before an Administrative Law Judge on April 2, 2014. (AR 32-64.) The ALJ issued a written decision two months later, finding Plaintiff not disabled within the meaning of the Social Security Act. (AR 12-25.) This became Defendant's final decision when the Appeals Council denied review. (AR 1-4.)

        Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.) After receipt of the administrative record (Doc. 12), the parties fully briefed the issues for review (Docs. 15, 20, 26). For reasons stated below, the Court finds that Defendant's decision must be reversed and the case remanded for an award of benefits.

## STANDARD OF REVIEW

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla but less than a preponderance, and "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

In determining whether the ALJ committed legal error, the district court is bound to apply the legal standards imposed by the law of this Circuit. This includes the requirement that, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Similarly, if "the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Where the ALJ has failed to provide legally sufficient reasons for rejecting evidence, and it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited as true, this Circuit has directed that the case be remanded for an award of benefits. *Smolen*, 80 F.3d at 1292.

## DISCUSSION

Whether a claimant is disabled is determined using a five-step evaluation process. The claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her

residual functional capacity (RFC) precludes her from performing any past work. If the claimant meets her burden at step three, she is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets her burden at step four, the Commissioner must show at the fifth and final step that, despite her impairments, the claimant is able to work given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920(a)(4).

Plaintiff has met her burden at steps one and two: she has not worked since the alleged date of disability and has the following severe impairments: fibromyalgia, neuropathy, migraine headaches, hand tremors, obesity, possible cognitive disorder with memory loss, mood disorder, and post-traumatic stress disorder. (AR 15.) The ALJ found at step three that Plaintiff's impairments do not meet or equal a listed impairment. (AR 16-17.) The ALJ then determined that Plaintiff has the RFC to perform simple and routine tasks and limited sedentary work. (AR 17.) Based on this RFC and the vocational factors, the ALJ determined at step four that Plaintiff is not disabled because there are a significant number of jobs that she can perform. (AR 24-25.)

Plaintiff challenges the RFC and step four determinations. Plaintiff argues that the ALJ improperly weighed medical opinions and erred in rejecting her testimony about the severity of her pain and other symptoms. Defendant counters that the ALJ properly resolved conflicts in the medical opinions based on substantial evidence, and provided sufficient reasons for finding Plaintiff not credible. The parties disagree as to whether any remand should be for an award of benefits or further proceedings.

The Court agrees with Plaintiff that the ALJ erred in discrediting her testimony. Because this legal error was not harmless, the ALJ's decision must be reversed and, for reasons stated below, remanded for an award of benefits.

**I. Plaintiff's Symptom Testimony**

Plaintiff provided written reports and testified at the hearing about her pain, fatigue, and other symptoms and how they severely limit her daily activities. (AR 42-56, 306-17, 347-55.) The ALJ found the testimony regarding the intensity, persistence, and

limiting effects of the symptoms not entirely credible. (AR 18.) The ALJ first claimed that symptom testimony, standing alone, could not be the basis for a disability determination absent the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms. (AR 18.) The ALJ concluded that there was a "lack of evidence" in this regard, and that Plaintiff's testimony about the severity of her symptoms was "unsupported by the clinical findings and evidence as a whole." (AR 18-19.) But this conclusion is in direct contradiction with the ALJ's earlier finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 18.)

Moreover, this Circuit has made clear that the claimant "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986)). Rather, by "requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon." *Id.* The ALJ "may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* An ALJ errs where, as in this case, he "effectively require[s] objective evidence for [fibromyalgia,] a disease that eludes such measurement." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).[1]

As noted above, the ALJ specifically found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. (AR 18.) Based on that finding, and because there is no affirmative evidence of malingering, the ALJ could reject Plaintiff's testimony about the severity of her symptoms only by making "specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284; *see*

---

[1] Defendant cites *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001), for the proposition that the ALJ may consider lack of medical evidence so long as it is not the sole basis for discounting the claimant's testimony. (Doc. 20 at 7.) As further explained, however, the other reasons the ALJ gave are neither convincing nor supported by substantial evidence.

20 C.F.R. § 404.1529(c)(2); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). The reasons provided by the ALJ are neither convincing nor supported by substantial evidence.

The ALJ first claimed that Plaintiff did not seek "aggressive treatment" and "has not received the type of medical treatment one would expect for a totally disabled individual." (AR 18-20.) Although conservative treatment, generally speaking, may be a legitimate reason for disbelieving a claimant's allegations of disabling pain, *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007), the ALJ in this case "did not specify what evidence in the record there was to suggest that Plaintiff's fibromyalgia treatment was conservative, as opposed to some other more aggressive treatment used to treat this disease, which she refused." *Chavez v. Colvin*, No. CV-12-1771-PJW, 2014 WL 1289778, at *5 (C.D. Cal. Mar. 31, 2014). "An ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'" *Cortes v. Colvin*, No. 2:15-cv-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) (quoting *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010)). Here, the ALJ failed to describe the type of treatment Plaintiff purportedly should have sought for her fibromyalgia, a disease for which there is no known cause or cure. *Benecke*, 379 F.3d at 590.

Moreover, Plaintiff was prescribed various pain medications for her fibromyalgia and migraine headaches, including Flexeril (cyclobenzaprine), Lyrica (pregabalin), Relpax (eletriptan), and narcotic drugs such as Norco and Lortab (hydrocodone and acetaminophen) and Percocet (oxycodone and acetaminophen). (AR 471, 476, 601, 620, 627, 632-33, 659.) This is not a case where, as in *Parra*, the claimant's "ailments were treated with an over-the-counter pain medication." 481 F.3d at 750. Rather, Plaintiff was referred for pain management and her doctors prescribed opioid medications which did not always prove effective in relieving her pain. Plaintiff also was prescribed anti-inflammatory injections (depo-medrol) and topical gel (Ketoprofen) (AR 471, 476), and sought emergency care for her pain on multiple occasions (AR 599, 618, 631, 635, 645,

655, 671). A fair review of the record does not support the ALJ's finding that Plaintiff's care was "routine and conservative" or that "aggressive treatment" was available. (AR 19-20.)

The ALJ next claimed that "there is no evidence that [Plaintiff] followed her doctor's advice for exercise." (AR 19.) The ALJ neither elaborated on this point nor cited to the record regarding a prescribed exercise regimen. Defendant cites a treatment note indicating that Plaintiff's goal was to begin "regular stretching and [a] low grade exercise program." (AR 422.) Plaintiff testified that she "does stretching types of things" and leg lifts and chair exercises to the best of her ability. (AR 54.) She further explained that she tried physical therapy and water therapy with poor results. (AR 51, 463.) The ALJ was wrong in concluding that there is no evidence that Plaintiff exercised.

The ALJ found that Plaintiff's impairments, although severe, "do not appear to significantly limit her daily functional abilities." (AR 21.) This finding is based on a mischaracterization of the evidence. An examination of the record as a whole shows that the ALJ omitted a number of salient details when recounting Plaintiff's activity level.

The ALJ claims that Plaintiff indicated she could care for her child and parents, do household chores, shop outside the home, and spend time with others on a regular basis. Despite having personally heard Plaintiff's testimony in this regard, the ALJ for some reason failed to address the limited nature of these activities. Plaintiff testified that her teenage son gets himself ready in the morning and she often has a hard time even taking him to school and sometimes has her elderly mother do so instead. (AR 42, 47-48; *see* AR 458.) With respect to "caring for her parents," Plaintiff said she did nothing more than fill up her terminally ill father's medicine pill box on a weekly basis because her mother cannot read the prescription labels. (AR 55.)

Regarding household chores, she stated that she can do housework only for 15-20 minutes at time – needing a 30 minute break in between vacuuming the small living room and hallway. (AR 43.) She can fold a little laundry out of the dryer until it becomes painful, so most laundry goes into a "clean basket" to be folded later. (AR 49.) She

made clear that her housework gets backed up because she hurts so much and needs to "take it little step by little step[.]" (AR 43.) Even the simplest of chores become "horrible" to do and can feel "like torture." (AR 49-50.) Plaintiff testified that her son goes grocery shopping with her because she cannot always reach or grab items from the shelves, and she sometimes uses an electric cart because "it's too much to walk the whole grocery store." (AR 49; *see* AR 321, 350, 353, 458.)

The ALJ noted that Plaintiff is capable of showering and caring for her own personal hygiene (AR 21), but failed to mention that Plaintiff sometimes needs help getting in and out of the shower and off the toilet, needs help putting on socks and shoes, has a hard time shaving, and has difficulty doing her hair because it hurts to lift her arms (AR 320, 349). The ALJ also noted that Plaintiff could prepare simple meals, but failed to explain that meals were sometimes difficult to make and that a lot of easy crockpot meals and frozen dinners were made. (AR 320, 349, 458.) Plaintiff stated that she is only able to go out with friends for karaoke "once in a blue moon" and often needs to cancel plans and stay home for a movie and pizza night. (AR 53; *see* AR 322-23.)

The ALJ conspicuously omitted the pain and difficulties Plaintiff experiences performing even the simplest daily activity. "Such an inaccurate representation of the record cannot constitute a specific, clear, and convincing reason for rejecting [Plaintiff's] testimony regarding her pain." *Rawa v. Colvin*, No. 14-17154, 2016 WL 7107990, at *1 (9th Cir. Dec. 6, 2016). This Circuit has repeatedly made clear that the mere fact that a claimant engages in routine activities such as grocery shopping, driving a car, and getting together with friends "does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" to be eligible for benefits).

Defendant contends that daily activities may be grounds for discrediting the claimant's testimony even when they are done with some difficulty (Doc. 20 at 10), but

even if this were true, the ALJ erred by failing to account for the difficulties and pain Plaintiff experiences performing even simple tasks. Defendant notes that Plaintiff reported to her doctor that a typical day involved "doing chores and childcare, [and] caring for her parents." (AR 463.) But Plaintiff explained at the hearing that these activities were limited due to her pain and fatigue, and she reported that her days also involved "taking many showers [for pain relief] and sleeping." (*Id.*; AR 44.)

In short, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated her symptoms." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see Orn*, 495 F.3d at 639 (ALJ erred where the claimant's activities did not contradict his other testimony and were not transferable work skills); *Benecke*, 379 F.3d at 594 (rejecting ALJ's adverse credibility finding where it was based in large part on the claimant's "ability to carry out certain routine tasks").[2]

The ALJ found that Plaintiff's activities were greater than she claimed given that she attempted to work part-time after the alleged onset of disability, noting that she stopped working for reasons unrelated to her medical condition. (AR 21, 23.) Plaintiff made clear, however, that although the store she worked at was closing, "it was recommended that [she] not continue working by the employer because [she] missed so many days." (AR 308.) The fact that Plaintiff unsuccessfully sought to return to work despite her impairments is "not, by itself, a clear and convincing reason for discounting her testimony." *Quarles v. Astrue*, No. CV-09-01015-PHX-ROS, 2010 WL 3614654, at *5 (D. Ariz. Sept. 10, 2010); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) ("That Lingenfelter, after the relevant time period during which he claimed to be disabled and facing difficult economic circumstances, tried to work for nine weeks and, because of his impairments, failed, is not a clear and convincing reason for [the adverse

---

[2] The ALJ noted that Plaintiff is able to count change, handle a savings account, and use a checkbook (AR 21), but the ALJ does not explain, and it is not otherwise clear to the Court, how these tasks in any way render Plaintiff's testimony about her pain and fatigue not credible.

credibility determination].").[3]

The ALJ discounted Plaintiff's complaints of "whole body pain," a symptom the treating physicians reasonably believed was caused by fibromyalgia. (AR 19.) The ALJ noted that examinations by the rheumatologist showed only eight tender points, not the eleven purportedly required by Social Security Ruling 12-2p and the criteria for fibromyalgia set forth by the American College of Rheumatology in 1990. (*Id.*) Plaintiff correctly notes, however, that the new "2010 diagnostic criteria do not require a specific number of tender points." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015); *see* SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012). "Even more significantly, the ALJ already found Plaintiff's fibromyalgia to be a severe impairment at step two." *Dorsett v. Colvin*, No. CV-16-01101-PHX-DGC, 2017 WL 840694, at *5 (D. Ariz. Mar. 3, 2017). Thus, her criticism of the purported lack of sufficient tender points and diagnosis of fibromyalgia is irrelevant. *See id.*

The ALJ found that Plaintiff's "healthy and comfortable appearance" during some of her doctor visits was "in sharp contrast to [her] allegations[.]" (AR 20.) This is not a convincing reason for rejecting Plaintiff's symptom testimony. "A person may be disabled without constantly appearing unhealthy or in acute distress." *Dorsett*, 2017 WL 840694, at *17. The ALJ seemed to agree, as he noted that his observation of Plaintiff appearing comfortable was "only one among many being relied upon in reaching" his conclusion that Plaintiff's symptom testimony was not credible. (AR 20.)

Another factor the ALJ relied on in disbelieving Plaintiff was her "unpersuasive appearance and demeanor while testifying at the hearing" at which she displayed "no evidence of pain or discomfort." (AR 23.) The ALJ properly considered Plaintiff's demeanor, but he is not free to reject her "complaints solely on the basis of . . . personal observations." SSR 96-7p, 1996 WL 374186, at *8 (July 2, 1996); *see Orn*, 495 F.3d at 639; *Smith v. Colvin*, No. C-14-1413 EMC, 2015 WL 1814433, at *4 (Apr. 21, 2015)

---

[3] Defendant notes that Plaintiff failed in her attempt to work only to prove that she is disabled. (Doc. 20 at 11-12). But even if this somehow adversely affected Plaintiff's credibility, it was not a reason given by the ALJ for rejecting her testimony.

(noting that SSR 96-7p confirms the "demanding standard" required for an adverse credibility finding and that "[n]othing in SSR 96-7p allows the ALJ to reject the claimant's credibility based solely on appearance and demeanor at the hearing").

Finally, the ALJ found that Plaintiff's "history of relatively low and inconsistent earnings prior to the alleged onset date . . . suggests a lack of motivation and undermines [her] credibility." (AR 23.) The ALJ cited to an earnings record which shows several years with no or only modest earnings (AR 294-95), but the ALJ does not address what Plaintiff was doing during those years or why her earnings may have been low. The Court cannot conclude that the ALJ erred in considering this factor, but when it is combined with the only other factor the Court finds proper – the "slight" negative weight assessed by the ALJ on the basis of Plaintiff's demeanor at the hearing (AR 23) – the Court does not find that "the ALJ has provided specific, clear, and convincing reasons, supported by substantial evidence, for disbelieving Plaintiff's claims concerning the severity of her conditions." *Dorsett*, 2017 WL 840694, at \*20.

**II. Remand**

Having found that the ALJ erred, the Court has discretion to remand the case for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited as true and the case remanded for an award of benefits when the following three conditions are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. 80 F.3d at 1292; *see Varney v. Sec. of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Hammock v. Bowen,* 879 F.2d 498, 503 (9th Cir. 1989) (extending *Varney's* "credit as true" rule to a case with outstanding issues where the claimant already had experienced a long delay and a treating doctor supported the claimant's testimony).

The Court has found that the ALJ failed to provide legally sufficient reasons for

rejecting Plaintiff's testimony about the severity of her symptoms. The uncontroverted testimony of the vocational expert makes clear that, if Plaintiff's testimony were credited as true, the ALJ would be required to find that Plaintiff's impairments preclude her from performing all work. (AR 62.) Indeed, Defendant acknowledges that whether Plaintiff's symptom testimony is credible is the "seminal issue" in this case. (Doc. 20 at 3.) Crediting Plaintiff's testimony as true, as the Court must under Ninth Circuit law, "it is clear from the record that the ALJ would be required to find [Plaintiff] disabled[.]" *Benecke*, 379 F.3d at 593. Because the record in this case has been fully developed (AR 1-713) and further proceedings would serve no useful purpose, remand for an award of benefits is appropriate.

Defendant argues that such a remand is unwarranted because "there is conflicting evidence, and not all essential factual issues have been resolved." (Doc. 20 at 19.) But Defendant had ample opportunity during the administrative proceedings below to carefully review the record and appropriately resolve conflicts. This Circuit's "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose[.]'" *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Defendant, "having lost this appeal, should not have another opportunity . . . any more than [Plaintiff], had [she] lost, should have an opportunity for remand and further proceedings to establish [disability]." *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

Moreover, it already has been more than four years since Plaintiff applied for benefits. (AR 205-15.) Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Varney*, 859 F.2d at 1398. Because it is clear from the record that the ALJ would be required to find Plaintiff disabled, further delay in the issuance of benefits is unwarranted.[4]

---

[4] Given this ruling, the Court need not address Plaintiff's argument that the ALJ

- 11 -

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED** and the case **REMANDED** for payment of benefits. The Clerk shall enter judgment accordingly and terminate the case.

Dated this 19th day of May, 2017.

_____
Douglas L. Rayes
United States District Judge

---

erred in giving little weight to the treating physician's opinion. It is worth noting, however, that in light of the discussion above, the doctor's opinion should not have been discounted for relying in part on Plaintiff's reports of her symptoms. (AR 23.)